ISAAC GRAHAM, Appellant, *v.* TILLATHA C. BENNET, Respondent.

Marriage is a civil contract, and no form is necessary for its solemnization. Where parties are able to contract, an open avowal of the intention and an assumption of the relative duties, which it imposes, are sufficient to render it valid and binding.

By the Act to regulate descents and distributions, " the issue of all marriages deemed null in law, or dissolved by divorce, shall be legitimate."

A marriage which is legitimate in form, but by the existence of a legal disability at the time, rendered void, comes within the above clause for the protection of the issue; and is " a marriage deemed null in law."

Such marriage, though void as regards the parents, the law declares that their issue shall be legitimate.

Such issue, in relation to their father, are the inheritors of his name, his heirs apparent, and entitled to look for and demand from him, his care, mainte-nance and protection. And he has the same right to their custody, control and obedience, as if the issue of a valid marriage.

APPEAL from the Third Judicial District for Santa Cruz.

The complaint sets forth, that in September, 1845, defendant proposed to marry the plaintiff, representing himself as a single man; and that, placing confidence in this statement, she con-sented to become his wife, according to the laws of the land, which were then the laws of Mexico; that defendant drew up what he represented to be a marriage contract, and she, ignorant of the laws, and relying upon defendant's statements, &c., signed the writing, in substance as follows: "Marriage in the year 1845. Isaac Graham, of Santa Cruz, and Catharine Bennet, of San Francisco, were married at Lyant, by banns, this 26th day of September, in the year 1845, by one who was requested to read the ceremony, Henry Ford. This marriage was solemnized between us, Isaac Graham, Catharine Bennet. In presence of William Wern, Henry Ford." After which the plaintiff lived and cohabited with defendant, as his wife, up to March, 1850, when she learned that defendant had a lawful wife living in Ten-nessee, at the time he professed to marry plaintiff; and at the same time she learned that the supposed contract was fraudulent

and void, and that two children which she had borne to defendant, were illegitimate; and on discovering the fraud, &c., left defendant, and went to Oregon, with her children. That in July, 1851, defendant came to Oregon, and in the night, with force, &c., defendant seized plaintiff and brutally assaulted her, &c, and tore away and abducted her two infant children, and carried them to California, compelling plaintiff to travel 800 miles in search of them, at great expense, &c., and to her damage $20,000.

The defendant's answer denied all the allegations of the complaint—charged the plaintiff with profligacy at the time, and before the alleged marriage, and specially denied the assault.

The case was submitted to a jury, who found the defendant not guilty of the assault, but guilty of the abduction of the children, and gave $2500 damages.

The proof on the part of the plaintiff was, that the parties had lived together as man and wife, for several years prior to 1850, and during that time had two children; that in that year a son of defendant came from Texas to California, and on his arrival defendant admitted he had a wife living in Texas, and that this son was a child of that marriage. And also, that defendant had pursued plaintiff to Oregon, and with violence had taken the children from her, and brought them to California.

Defendant proved that he had been married in 1823, in one of the Southern States, and had left that part of the country in 1827 or 8, on a trip to the Rocky Mountains. That his wife had given birth to a child some fifteen months after he had left her, and had removed to Texas; and that in 1838 or 9, she had married again, and that her second husband was dead. He also gave some oral proof that, according to the laws of Texas, seven years of absence operates as a divorce, and that two years abandonment, authorizes the courts to grant it.

There was some further testimony on both sides, but as it had no connexion with the view taken of the case by the Court, it is omitted.

The Court charged the jury, that if the defendant took the children of plaintiff against her consent, and was not married to her, and if the children were minors, they might find him guilty

of abduction, and assess damages; and if there was cruelty or wantonness in the abduction, they might give exemplary damages.

After verdict, defendant moved for a new trial, which was refused, and this appeal was taken.

*Crockett* and *Baker*, for appellant.

The parties having lived and cohabited together, as man and wife, the law presumes them to have been married; and the proof of its invalidity lies upon the party asserting it; 2 S. & R. 475; 1 Green. Ev. sec. 452; 1 Tay. 121; 2 N. & M. 114; 1 Har. & McH. 152; 1 Dev. 337; 1 Pen. 450; 4 Johns. 52.

The marriage, as stated in the complaint, was valid, provided the parties were competent to contract. Marriage is a civil contract, and no form necessary to its validity; 7 Wend. 47; 4 Johns. 52; 2 Greenl. Ev. sec. 460.

This marriage was legal—the law of Texas operating a divorce. But if illegal, suits for abduction will only lie where there is loss of service, and this is not alleged; 2 Greenl. Ev. sec. 571; 5 Phil. Ev. 215; 3 Comst. 489; 20 Wend. 310; 24 do. 429.

*McHenry*, for Respondent.

If there be no statute allowing divorce, it is the law of the United States, England, and the Christian world, that no length of time, or absence, and nothing but death, will dissolve the marriage contract; 2 Kent's Com. 80.

The law of Texas, if as stated, operates no divorce for the wrong-doer. Defendant deserted his wife in Tennessee, and is incapable of contracting a marriage while she is living; and a second is void. 2 Kent, 78, 79, 80; 1 Johns. Ch. Rep. 392.

The fact of marriage may be rebutted by proof, that any circumstance required by law to validate it, was wanting; Greenl. Ev. 380, sec. 462.

But no marriage was contracted between the parties, according to the *laws of the country;* 7 Mass. Rep. 55, 6, 7. In the year 1845 the law of Mexico was in force, and that required (in common with all Catholic countries, since the Council of Trent,)

that a marriage to be valid, must be solemnized in presence of the parish priest.

The marriage being invalid, the children are illegitimate. But if, by the operation of the laws of this State, the children are legitimate, the appellant cannot shield himself on this ground, from the responsibility of his wrongful acts.

The Practice Act does not recognize the "*loss of service,*" as an allegation necessary to sustain a charge of abduction and damages in consequence.

HEYDENFELDT, Justice, delivered the opinion of the Court, with which MURRAY, Chief Justice, and ANDERSON, Justice, concurred.

The last clause of section 2, of the Act to regulate Descents and Distributions, declares—"The issue of all marriages deemed null in law, or dissolved by divorce, shall be legitimate."

Marriage is regarded as a civil contract, and no form is necessary for its solemnization. If it takes place between parties able to contract, an open avowal of the intention, and an assumption of the relative duties which it imposes on each other, is sufficient to render it valid and binding.

The ceremony, therefore, which took place between the plaintiff and defendant, as shewn by the complaint, was sufficient to constitute them man and wife, if there had been no legal disability. But with such disability existing, it would then come within the meaning of the act above quoted, and is a "marriage deemed null in law."

The results, however, of such invalidity, as they would affect the issue of the marriage at common law, are here provided against.

The ceremony which was instituted by the parents, although illegal and void as to them, is declared sufficient to protect their offspring against the stain of bastardy, and its accompanying conditions. The law declares they shall be legitimate. They are, therefore, in relation to their father, the inheritors of his name, his heirs apparent, and entitled to look for, and demand from him, his care, maintenance and protection. On the other hand, he has the unquestioned right to their custody, control,

and obedience, to the same extent as if they were the issue of a valid marriage.

This view renders it unnecessary to notice the other questions which are raised, as it is completely decisive of the rights of the parties.

The judgment is reversed.