[Civ. No. 5207. First Appellate District, Division One.—September 24, 1927.]

LUVENIA McMILLAN et al., Appellants, v. GEORGE L. GREER, Respondent.

Scarborough, Forgy & Reinhaus for Appellants.

S. L. Carpenter for Respondent.

CAMPBELL, J., *pro tem.*—This is an action based upon the alleged negligence of respondent, who is an attorney at law practicing in Los Angeles. Respondent was retained by appellants to represent their interests in the estate of Russell Wayman, deceased, which estate at the time of respondent's employment was in the course of probate in the superior court of Los Angeles County, and this action was brought after the decree of distribution was made and entered in the Wayman estate alleging damage suffered by appellants by reason of the negligence of respondent as their attorney in representing their interests therein.

There is no conflict in the evidence, all of which, oral and documentary, was admitted without objection from either side.

The evidence shows and the court found that one Martha Wayman, a negress and a slave, had two children. The elder was Taylor Christian, the son of a white man and unquestionably illegitimate. After the birth of Taylor Christian, Martha Wayman and a negro slave, Cyrus Wayman, were married by a negro preacher, and to them was born, Russell Wayman. Prior to the birth of Russell Wayman and prior to the Civil War the master of Cyrus Wayman took him to Texas or Tennessee. Martha Wayman and Cyrus Wayman never saw each other again and thereafter there was no cohabitation between them. Martha Wayman and Cyrus Wayman both died before Russell Wayman, Cyrus dying first. Taylor Christian predeceased Russell Wayman, and the latter resided in Alabama with his mother until 1900, when he moved to Los Angeles. Russell Wayman never married. The appellants are legitimate children of Taylor Christian.

The estate of Russell Wayman was distributed to Winnie Thompson and Callie Leah Lewis, sisters of Cyrus Wayman, deceased, the father of Russell Wayman.

The court found that Russell W. Wayman mentioned in the pleadings died intestate, a resident of Los Angeles County, in June, 1920, leaving estate in said county; that petition for letters of administration was filed August 21, 1920, by the public administrator naming appellants next of kin and heirs of said deceased. Subsequently one Winnie Thompson and one Callie Leah Lewis claimed in said court the right of succession to said estate as heirs and on September 16, 1921, the estate was distributed to them. The court further found that after the exhibiting of the claims of heirship of Winnie Thompson and Callie Leah Lewis and while the administrator's final account and petition for distribution was pending, to wit, in the month of August, 1921, the defendant, an attorney at law, engaged in practice in the county of Los Angeles, was employed by plaintiffs to represent them in respect of their claim to succeed to said estate; that defendant did not enter his appearance for the plaintiffs in the administration proceedings, but on the day the matter of distribution was in the first instance set for

hearing, viz., on September 15, 1921, took up the matter at chambers with the judge of the probate department and after a discussion of the facts of the case as shown by the depositions said judge expressed very decidedly the conclusion that the plaintiffs were without legal right to the estate. The hearing was continued until the following day, but the defendant, being convinced that the view expressed by the probate judge at the discussion in his chambers was correct, made no further efforts in plaintiffs' behalf, and the estate was distributed to the opposing claimants.

The court made no finding upon the question whether or not Russell Wayman was legitimate, although the effect of the finding is that he was legitimate; nor does the court find upon the question of the negligence of respondent, but finds in effect that even though he were negligent appellants were not entitled to recover.

It is conceded by both respondent and appellants that there are but two questions for determination by this court: What was Russell Wayman's status in respect of legitimacy in the state of California?    And, Was respondent negligent?

H. A. Bradshaw, whose deposition was introduced, testified he is an attorney at law residing in Florence, Alabama, admitted to practice in all the courts of the state of Alabama and the federal courts, and had been engaged in the practice in Florence, Alabama, for seventeen years, and that he was familir with the law of the state of Alabama regarding slave marriages and the issue of such marriages; that prior to the Civil War and the emancipation enactments the so-called marriages between slaves had no legal status; that prior to the enactment of the ordinances of the constitutional convention of 1865 slaves could not legally enter into the marriage state; children of such slaves were illegitimate—they had no legal status; as a matter of law Russell Wayman, being a child born prior to the Civil War of Cyrus Wayman, a slave, and Martha Wayman, ·who was a slave, was under the law of Alabama an illegitimate child; Cyrus Wayman several years prior to the Civil War having been removed to Texas by his owner and having continued to live there until his death and not living together with Martha Wayman at the time of the enactment of the ordinances of the constitutional convention of 1865, Russell

Wayman was an illegitimate child under the laws of Alabama.

Appellant has cited us to the ordinances of the constitutional convention of Alabama and to several decisions of the supreme court of that state which were read into the record to establish the fact of the illegality of the marriage contracted between Martha Wayman and Cyrus Wayman and to the illegitimacy of their child Russell Wayman.

▇ Unquestionably the marriage contract entered into between Martha Wayman and Cyrus Wayman was null in law and under the law of Alabama Russell Wayman was an illegitimate child, but is he not in this state, under section 1387 of the Civil Code, relieved of the stain of bastardy? This is the determinative question presented by this appeal. If it be declared that he was an illegitimate child, the judgment must be reversed; but if it be declared that his status at the time of his death was that of a legitimate child, the judgment should be affirmed, for, notwithstanding respondent's negligence, if Russell Wayman was legitimate under the law of this state and the property of his estate was properly distributed, no recovery may be had.

Appellants urge that the question here presented is no longer an open question in this state; that the illegitimacy of children born of slave marriages has been directly passed upon, and cites us *Estate of Campbell,* 12 Cal. App. 707 [108 Pac. 669, 676], decided by the district court of appeal of the third district, in which the same question was involved.

▇ It appears from the record Wayman died in California in 1920, being at the time of his death and for several years prior thereto a resident of and domiciled in this state. He was the child of a slave marriage contracted in the state of Alabama before emancipation. The marriage was solemnized by a colored preacher, confirmed by subsequent cohabitation, and admittedly would have been a valid marriage except for the fact that under the laws of that state as they existed during the slavery period marriages between slaves were declared to be void for want of capacity of the parties to contract the same, and the children thereof were declared to be illegitimate. Ever since California was admitted to statehood, however, it has carried upon its statute books as a part of its law of inheritance a provision that "the

issue of all marriages null in law . . . are legitimate'' (Stats. 1850, p. 219; Civ. Code, sec. 1387). The opinion in the *Estate of Campbell* contains a very able and elaborate discussion by Mr. Presiding Justice Chipman of the effect of slave marriages in the states where contracted and of their legal standing under the laws of this state and in conclusion holds in effect that the issue of such marriages, if not legitimated by statutes enacted subsequently in the state wherein the marriage was contracted, are deemed to be illegitimate in this state. But nowhere in the opinion in that case does the author deal with the question of the application of the provisions of section 1387 to the status of the children born of such marriages nor of the purpose or meaning of that provision. In other words, the question of the application of the very provision of our statute which apparently was designed and intended to cover just such cases was not discussed or directly ruled upon therein.

█ A petition for the transfer of that case was filed with the supreme court, but by a majority of the members thereof was denied. Mr. Justice Shaw dissented and in the concluding sentence of his dissenting opinion said: ''I think it proper to add that the denial of a rehearing in this court does not necessarily mean an approval of the opinion of the district court (*People* v. *Davis,* 147 Cal. 350 [81 Pac. 718]).''

*People* v. *Davis,* cited, establishes the following rule relating to the question of the conclusiveness of a decision of the district court of appeal after denial of a transfer by the supreme court: ''It is proper to add that the denial in any case of an application for the transfer of a case decided by a District Court of Appeal is not to be taken as an expression of any opinion by this court, or as the equivalent thereof, *in regard to any matter of law involved in the case and not stated in the opinion of that court,* nor, indeed, as an affirmative approval by this court of the propositions of law laid down in such opinion. The course to be pursued by this court in the exercise of its power in any case is a matter in which the objects above stated are the controlling considerations, and it will not hold itself bound even where questions of law alone are involved, to order a transfer of the cause after a decision of the District Court, except where it shall appear necessary in order to carry

out the above-stated purposes of securing uniformity of decision and the settlement of important questions of law. The significance of such refusal is no greater than this— that this court does not consider that the interests of justice or the purposes for which the power was given require its exercise in the particular case.'' The rule stated has never been repudiated, but, on the contrary, has been cited approvingly up to and including *In re Stevens,* 197 Cal. 424 [241 Pac. 88].

Assuming, therefore, that the *Estate of Campbell* may have involved the question of the application of the provisions of section 1387, it is apparent from the face of the opinion that such question was not considered and, if so, was not expressly passed upon. Consequently, it would seem that the decision therein cannot be taken as an adjudication of the inapplication of the provisions of the section to the status of children born of slave marriages, which would preclude this court in the present case from giving full consideration to and passing directly upon that question.

If the question of legitimacy be dealt with as one of first impression, we are of the opinion that the provisions of the section should be given full application to the situation herein presented for the following reasons: All of the cases cited and discussed by Mr. Presiding Justice Chipman in the *Estate of Campbell* holding that slave marriages were void and that the offspring thereof were illegitimate are grounded upon the legal principle that on account of statutory inhibitions existing in the slave states prior to emancipation slaves did not have legal capacity to enter into contracts of marriage. As early as 1852, however, the supreme court of this state expressly declared in the case of *Graham* v. *Bennett,* 2 Cal. 503, that the children of marriages which were void in law because of lack of capacity of the parties to contract, the same were deemed to be legitimate within the meaning of the provisions now embodied in section 1387. In *Graham* v. *Bennett* the husband, having a lawful wife living, contracted a second marriage, as the result of which two children were born. When the second wife learned that the marriage was bigamous she took her children to an adjoining state, but they were subsequently returned to this state by their father, and the question arose as to their care and custody. The determina-

tion of that question depended upon whether under the law of this state the children were deemed to be legitimate or illegitimate. The court said: "The ceremony, therefore, which took place between the plaintiff and defendant, as shown by the complaint, was sufficient to constitute them man and wife, if there had been no legal disability. But with such disability existing it would then come within the meaning of the act above quoted and is a 'marriage deemed null in law.' The results, however, of such invalidity, as they would affect the issue of the marriage at common law, are here provided against. The ceremony which was instituted by the parents, although illegal and void as to them, is declared sufficient to protect their offspring against the stain of bastardy and its accompanying conditions. The law declares they shall be legitimate. They are, therefore, in relation to their father the inheritors of his name, his heirs-apparent and entitled to look for and demand of him his care, maintenance and protection. On the other hand, he has the unquestioned right to their custody, control and obedience to the same extent as if they were the issue of a valid marriage.'' The law as thus declared has never been overruled (*Estate of Baldwin,* 162 Cal. 471 [123 Pac. 267]). We can see no difference in principle between that case and the present one. In each the marriage was void because of the lack of capacity of the parties to enter into the marriage contract. The statute itself does not differentiate between the kinds of void marriages. It includes "the issue of *all marriages* null in law"; and this latter term "marriages null in law" has been held to include void marriages other than those which may be annulled for the causes enumerated in section 82 of the Civil Code (*Estate of Shipp,* 168 Cal. 640 [144 Pac. 143]). What logical reason, then, can be assigned for extending the humane provisions of section 1387 to the children of a void bigamous marriage and denying the same to the children of a void slave marriage? If such provision be held not to apply to children of slave marriages, then it is entirely meaningless.

Of course, if there had been no pretense of marriage, then a different case would be presented. A child born under such circumstances is not a child of a "marriage null in law" and could not claim to be legitimate under section 1387; its right of inheritance would be controlled by section

1388 of the Civil Code—but that is not this case. As said by Mr. Justice Shaw in his dissenting opinion, "if there ever was a law which should be broadly and liberally construed, it must be admitted that this law (section 1387) is of that class when applied to a marriage which, in all respects except the capacity to enter into it, was as formally solemnized and as faithfully observed as that of free persons. I can conceive of no sound reason for refusing to apply this statute to the children of a marriage which is null only because the man and woman who entered into the relation were slaves. The question is of little future importance, but I cannot allow a doctrine which I deem so repugnant to humanity to receive even the silent sanction of acquiescence without a protest."

We are of the opinion that the provision carried upon the statute books as a part of the law of inheritance since California was admitted to statehood that the issue of all marriages null in law are legitimate has application here, and therefore the judgment should be affirmed. It is accordingly so ordered.

Knight, Acting P. J., and Cashin, J., concurred.

A petition by appellants to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 21, 1927, and the following opinion then rendered thereon:

THE COURT.—The application for transfer to this court after decision by the district court of appeal of the first appellate district, division one, is denied.

▮ The application is based, in part, on a conflict between this decision and the decision rendered by the district court of appeal of the third appellate district in *Estate of Campbell*, 12 Cal. App. 707 [108 Pac. 660–676]. In so far as that case is inconsistent with the decision in the above-entitled case the decision in *Estate of Campbell* is overruled.