[Civ. No. 24222. Second Dist., Div. Two. Sept. 22, 1960.]

EMMA K. CAMPBELL, Appellant, v. RAOUL D. MAGANA et al., Respondents.

Robert H. Powsner for Appellant.

Henry P. Lopez, in pro. per., Henry E. Kappler, Callaway, Kirtland & Packard for Respondents.

ASHBURN, J.—Action for damages for negligent handling of plaintiff's personal injury action by defendants when acting as her attorneys. Plaintiff appeals from a judgment in favor of defendants rendered after a nonjury trial.

The trial judge found that defendants were negligent in the handling of the case but that plaintiff suffered no damage. The evidence supporting the finding of negligence is substantial and that finding is not challenged by either side.

Appellant's main contention is that the findings do not sustain the judgment because the court failed to find upon a cardinal issue, namely, the value of her chose in action, her lawsuit. The court did find that plaintiff did not have a cause of action against Cherry Hardware Company, the only defendant in her action for personal injuries. "The Court further finds that plaintiff did not have a valid cause of action in case No. 536727 wherein Frank H. Cherry et al., were the defendants, and further finds that from the evidence the defendants in said action No. 536727 were not legally liable to plaintiff." But appellant's counsel contends that a lawsuit (good or bad) is a chose in action, hence property, and that this one had an actual value other than that inhering in an existing right to recover; that it had a settlement or nuisance value which cannot be disregarded. The opening brief says that "for the Court to have met this issue and rendered judgment for defendants required a finding that plaintiff's action had absolutely no value to her; and because her property was valueless, its destruction caused her no damage. . . . For an evaluation of that issue many factors are

material. The possibilities of success or lack of it in the original action, the settlement practices of the insurance company claims supervisor, the eminence of plaintiff's counsel, the vigor of their investigation, preparation and presentation, the probable length of a trial, and the severity of plaintiff's physical injuries." ▉ ▉ This argument cannot prevail for at least two reasons; first, it advances speculative values as a measure of recovery; and second, it violates an established rule of this state (and most others) that one who establishes malpractice on the part of his attorney in prosecuting or defending a lawsuit must also prove that careful management of it would have resulted in recovery of a favorable judgment and collection of same or, in case of a defense, that proper handling would have resulted in a judgment for the client; that there is no damage in the absence of these latter elements, and the burden of proof rests upon the plaintiff to prove recoverability and collectibility of a plaintiff's claim or ability to establish a defense for a client who has been sued.

Such has been the rule of this state since the decision in *Hastings* v. *Halleck* (1859), 13 Cal. 203, 209-210.

*Lally* v. *Kuster,* 177 Cal. 783 [171 P. 961], was an action for damages for neglect of defendant-attorneys in the collection of a note and mortgage. The Supreme Court held that the lower tribunal had erred in deciding for defendant upon the issue of liability and then turned to the question of damage. It said, in part: "The lower court found appellant's mortgage was uncollectible, as it had been paid. In considering the evidence on that subject, it is necessary to bear in mind the rule as to the burden of proof. 'In a suit by a client against an attorney for negligence in conducting the collection of a claim, whereby the debt was lost, the burden rests on the former to allege and prove every fact essential to establish such liability. He must allege and prove that the claim was turned over to the attorney for collection; that there was a failure to collect; that this failure was due to the culpable neglect of the attorney, and that, but for such negligence, the debt could, or would, have been collected. Hence, where a claim is alleged to have been lost by an attorney's negligence, in order to recover more than nominal damages it must be shown that it was a valid subsisting debt, and that the debtor was solvent.' " (Pp. 787-788.) "The utmost that we can assume on the appeal of the instant case is that the most favorable decree she could have secured would have been one based upon the truth of her testimony and all the inferences prop-

erly deducible from that testimony. On this appeal this court is substantially in the situation that it would be in reviewing the decision of the trial court in the mortgage foreclosure proceeding had the evidence offered here been introduced in that case and the decision therein been favorable to the defendant, Mrs. Brown.'' (P. 790.) ''The measure of damages then accruing to the appellant would be the loss caused by the dismissal, which would be the amount that could have been recovered in foreclosure proceedings, less the actual value, if any, of the barred note and mortgage to the appellant.'' (P. 791.)

*Feldesman* v. *McGovern*, 44 Cal.App.2d 566 [112 P.2d 645]. Action against plaintiff's attorney for damages for failure to file a petition for his discharge in bankruptcy. Demurrer to the complaint was sustained without leave to amend and the ensuing judgment was affirmed. The court said, at page 570: ''Furthermore, as respondent points out, in cases where the attorney was sued by the client for failure to enforce the collection of a note, it is held that the client must allege and prove not only that he would have obtained judgment on the note, but that the debtor was solvent and the judgment would have been collected; all of which are really matters of defense. Nevertheless, as contended by respondent, the cases hold they are not matters of defense in an action against the attorney, but are essential elements to the cause of action. (See *Lally* v. *Kuster, supra,* and authorities cited therein.) ''

*Pete* v. *Henderson*, 124 Cal.App.2d 487 [269 P.2d 78]. Action to recover damages from plaintiff's attorney growing out of failure to file notice of appeal from a judgment theretofore rendered against the plaintiff in the sum of $1,660. The trial judge refused to entertain any evidence or discussion concerning the merits of the appeal in the first action, granted a nonsuit and was reversed. The court said, at page 489: ''A lawyer is required to exercise due care in the handling of the affairs of his client and must perform his professional duties to the best of his ability. (*Clark* v. *State Bar*, 39 Cal.2d 161 [246 P.2d 1].) If he does not do so, he is liable to his client for such failure if damage results. His liability, as in other negligence cases, is for all damages directly and proximately caused by his negligence. (See cases collected 6 Cal.Jur.2d p. 324, § 146.) '' At page 490: ''If the judgment against him for $1,660 was erroneous, to the extent that it would have been reversed on appeal under circumstances that would not re-

quire him to pay it, he has suffered serious damage indeed. That damage was directly and proximately caused by the negligence of the attorney. If proof of the required facts can be made, appellant should be able to recover the damage so suffered. . . . He is seeking to recover damages from his attorney, who was not a party to the first action, for his negligence in permitting the judgment to become final without taking an appeal. If he can prove that the judgment in that case was erroneous and would have been reversed, he should be permitted to do so. In that event he has proved damage proximately caused by the negligence. . . . It is true that this result involves certain difficulties, not the least of which is to try and convince one trial judge that another judge of equal jurisdiction rendered such an erroneous judgment that it would have been reversed on appeal, had one been taken. But the fact that it may be difficult to make such proof is no ground to deny the right to present such proof if it can be made.'' At 491: ''The rulings of the trial court on these issues were clearly erroneous. Does this require a reversal? We think that it does. It is true that a plaintiff in such a case must plead and prove that the appeal, had it been taken, would have resulted in a reversal. Appellant neither pleaded nor proved this fact. This would ordinarily be fatal and would require an affirmance. (*Feldesman* v. *McGovern,* 44 Cal.App.2d 566 [112 P.2d 645] ; *Hays* v. *Ewing,* 70 Cal. 127 [11 P. 602].) But there are several factors here existing that make that rule inapplicable to the instant case.'' At 492: ''Under such circumstances the ends of justice require that the judgment, predicated on these erroneous rulings, be reversed, and appellant be given the opportunity to amend his complaint, and to prove, if he can, that, had the judgment in the first action properly been appealed, it would have been reversed.'' (See also *Lane* v. *Storke,* 10 Cal.App. 347, 351-352 [101 P. 937] ; *McMillan* v. *Greer,* 85 Cal.App. 558, 561 [259 P. 995] ; *Agnew* v. *Parks,* 172 Cal.App.2d 756, 769 [343 P.2d 118] ; 6 Cal.Jur.2d, § 147, pp. 326-327; *McLellan* v. *Fuller,* 226 Mass. 374 [115 N.E. 481, 482] ; *Maryland Casualty Co.* v. *Price* (4 C.C.A.), 231 F. 397, 402 [145 C.C.A. 391, Ann. Cas. 1917B 50].)

45 American Law Reports 2d, § 5, page 21: ''In the great majority of the cases which have passed upon the questions it has been held that a client claiming that his attorney was negligent in connection with litigation has the burden of proving that damages resulted, this burden involving, usually,

the difficult task of demonstrating that, but for the negligence complained of, the client would have been successful in the prosecution or defense of the action in question.'' This burden the plaintiff at bar did not sustain, as will later appear herein.

The claim now advanced as to the value of plaintiff's lawsuit regardless of inherent merit is urged for the first time on appeal. The complaint alleges ''that defendants, and each of them, could, by the exercise of due diligence and skill, have obtained final judgment for plaintiff in the aforesaid action'' and that through defendants' negligence plaintiff ''lost her means of recovery of the money sought to be recovered in said action as aforesaid; that plaintiff was unable to recover the balance of One Hundred Seventeen Thousand One Hundred and Forty-one Dollars ($117,141.00) for general and other damages.'' A pretrial joint statement (incorporated in the order by reference) defines the issues as follows: ''1. The liability, if any, of the defendant Cherry Hardware Company in case number 536727; and the ability of said defendant to respond in damages if the plaintiff in that case had been awarded a judgment against such defendant. . . . 3. The damages, if any, sustained by plaintiff in the accident out of which said action number 536727 arose. 4. Were the defendants in this case, number 630694, or either of them, negligent in failing to prosecute the original action, number 536727, in the trial court, or in failing to prosecute the appeal of said action in the appellate court and, if so, was such negligence the proximate cause of plaintiff's alleged damage.'' This pretrial order effected a narrowing of issues such as to eliminate any question of the speculative element of damage consisting of the possibility of settlement, nuisance or otherwise, a thing never discussed in the trial court. Rule 8.6 of Rules Relating to Pretrial Conferences requires that the judge's pretrial order state ''the factual and legal contentions made by each party as to the issues remaining in dispute.'' Rule 8.8 says: ''When filed, the pre-trial conference order becomes a part of the record in the case and, where inconsistent with the pleadings, controls the subsequent course of the case unless modified at or before trial to prevent manifest injustice.'' There was no request for correction or modification here. See, as to the effect of silence of pretrial order upon any issue not therein mentioned, *Dell'Orto* v. *Dell'Orto*, 166 Cal.App.2d 825, 831 [334 P.2d 97]. In his opening statement at the trial counsel for plaintiff said: ''We shall prove that the case did have merit, that the plaintiff would have recovered in the

original Cherry case.'' Near the end of the trial counsel and the judge undertook to clarify the issues: ''THE COURT: Basically we are dealing with this: Was there negligence on the part of the defendants in this case, and if there was, what was the proximate result thereof? That could only depend upon what would have happened had the other case been tried with all of its allegations and defenses and testimony. MR. CALLAWAY: That's right. MR. KARTZINEL: I prefer your Honor's approach.'' Manifestly the present claim of a settlement value, as distinguished from a recovery value, was eliminated from this case and it is too late to raise it on appeal.

Moreover, the record shows that the best offer of settlement that plaintiff ever had was $350 and she declared ''she would settle for nothing less than $100,000.'' Any possibility of adjustment outside of court plainly fell in the category of speculation, conjecture and contingency. The basic rules concerning damages preclude recognition of this type of recovery. *McGregor* v. *Wright,* 117 Cal.App. 186, 197 [3 P.2d 624]: ''The courts of this state have held strictly to the rule that ''the mere probability that a certain event would have happened, upon which a claim for damages is predicated, will not support the claim or furnish the foundation of an action for such damages. (*McQuilkin* v. *Postal Tel. Cable Co.,* 27 Cal.App. 698 [151 P. 21]; *Kenyon* v. *Western Union Tel. Co.,* 100 Cal. 454 [35 P. 75]; 8 Cal.Jur. 757.)'' See also *Lane* v. *Storke, supra,* 10 Cal.App. 347, 350; *Agnew* v. *Parks, supra,* 172 Cal.App.2d 756, 768; 14 Cal.Jur.2d, § 68, p. 692. The case is thus narrowed to the question whether the evidence supports the finding that plaintiff had no valid cause of action against Cherry Hardware Company and that that concern was not legally liable to her.

Appellant's counsel has but casually paid deference to the rule stated in *Nichols* v. *Mitchell,* 32 Cal.2d 598, 600 [197 P.2d 550], as follows: ''And where appellant urges the insufficiency of the evidence to sustain the findings . . . the rule is that, 'Such contention *requires defendants to demonstrate* that there is no substantial evidence to support the challenged findings.' '' (Emphasis added.) But we have examined the entire record and have concluded that the evidence supporting that finding is substantial and quite sufficient.

 The accident occurred on January 25, 1947. Cherry Hardware Company was engaged in the hardware and paint business, having three stores one of which was located at 5629 South Vermont Avenue, Los Angeles. Cherry was agent

for the sale of incinerators manufactured by Monarch Incinerator Company. They were made of slabs of concrete with a drop-front door or lid set in a cast iron frame which was bolted through the concrete slab. Upon a lot adjoining said defendant's Vermont Store there were a number of sample incinerators which were lined along the sidewalk and about two feet distant therefrom; they were there as samples for the purpose of attracting the attention and enticing the interest of prospective customers. The samples belonged to Monarch and were removed or replaced from time to time without notice to Cherry. Orders were taken by Cherry, forwarded to Monarch and filled by it. We of course accept as established those facts and inferences most favorable to respondent. (*New* v. *New*, 148 Cal.App.2d 372, 383 [306 P.2d 987].) On the evening of January 25, 1947, plaintiff parked her car across the street from the incinerators at about 9 o'clock, after the store was closed. She crossed the street to examine them. Though illumination from the store was almost nil, a street light opposite the incinerators afforded plenty of light for their examination. As she approached one that attracted her favorable attention she saw nothing wrong with it or its lid. "THE COURT: It all looked whole and intact? THE WITNESS: It appeared to be perfectly all right, yes." She also testified: "I went over there and put my hand out and touched the kind of a coiled wire knobbed thing. Q There was a knob handle on the door of the incinerator? A Yes. Q And you took that in your hand? A I put my hand onto it, intending to grasp it, to open it. . . . Q BY MR. KARTZINEL: You put your hand on the knob? A Yes. Q What happened then? A It fell. Q It fell on what? A The door fell on my instep area. Q Of your foot? A Of my left foot." After standing there crying for a few moments, she hopped to the store which, though closed, had inside lights and someone was visible from the outside. She pounded on the glass and Mr. Georgi, manager, came to the door. She told him of the accident, he said to get medical attention and put in a report of the accident. She returned to her car across the street and drove home. Then following a long series of sequelae, mostly subjective, which, as related from the witness stand, were well calculated to cause the trial judge to discount her testimony at any crucial point.

Through attorneys other than respondents herein she sued Cherry Hardware Company on November 4, 1947, and did not join Monarch Incinerator Company, the manufacturer. Lia-

bility having been denied, the case came on for trial on April 27, 1949, but, as related by the pretrial stipulation, "after several days a mistrial was declared by reason of misconduct on the part of the plaintiff." On October 20, 1949, she replaced her attorney and appeared in propria persona until April 24, 1952, when she employed respondents herein, experienced attorneys, to represent her in prosecuting said case (Superior Court No. 536727). It was set for trial in September, 1952, continued by oral stipulation to March 5, 1953, and again continued by oral stipulation to August 5, 1953, beyond the five-year period prescribed by § 583, Code of Civil Procedure. In due course counsel for defendant Cherry moved to dismiss under said section, and the motion was granted. Respondent attorneys took an appeal from the order but abandoned it. As above stated, the trial judge upon sufficient substantial evidence found both respondents negligent in the handling of the action. The question of damage turned, as above shown, upon that of liability of Cherry for injuries received by plaintiff in the accident.

Appellant claims to have been a business invitee, the trial judge so regarded her and we see no occasion to question that hypothesis. Such being the situation Cherry owed her the duty of reasonable inspection as a means of keeping the premises and the sample incinerators reasonably safe for her examination and was chargeable with such knowledge, actual or constructive, as reasonable inspection should have disclosed. The trial court held that this obligation had been fulfilled and that Cherry had no knowledge, direct or imputed, of any dangerous condition of the incinerator or its door. It is not shown in the record just how the door broke or what caused it to do so. It seems that the pin which formed a part of the hinge of the door broke. The metal showed that the break was a fresh one, there being no indication of rust or an old break. It was customary for Monarch to replace the samples from time to time without notice to Cherry. No one knows how long this one had been on the Cherry premises. The defect in the lid or hinge was a hidden one. Mr. Vernon E. Cherry, one of the partners of the Cherry Hardware Company, parked his car behind the incinerator display almost every day and observed them as he passed on the way to the store, making what he called a casual inspection, and said, "if there was anything noticeably wrong, I would have noticed it." Salesmen when showing the incinerators to customers would work the lid or door. No similar accidents had occurred

in the years during which Cherry had been handling Monarch incinerators in the same manner and Mr. Cherry testified he had no information that any of them were not working or that any had a break in the cast iron.

The law requires only reasonable inspection from time to time and the trial judge found, we think properly, that that had been done in this instance. ''The owner of premises is not an insurer of the safety of his invitees. He becomes liable for their injuries suffered on his property solely by reason of his superior knowledge of the existing danger to invitees who may enter his grounds while in ignorance of the peril. If he is also ignorant both actually and constructively of the danger, he is not liable. . . . Therefore, in order to warrant a finding of negligence on the part of respondents it was essential that the jury find from the evidence that respondents either caused the danger, or that it was caused by a condition of which they knew, or that its continued existence over a period of time was long enough reasonably to impart knowledge to respondents.'' (*Perbost* v. *San Marino Hall-School*, 88 Cal.App.2d 796, 803 [199 P.2d 701].)

▋ *Oldenburg* v. *Sears, Roebuck & Co.*, 152 Cal.App.2d 733, 741 [314 P.2d 33]: ''The occupier of business property owes to invitees a duty to exercise reasonable care in keeping the premises reasonably safe for such invitees. [Citations.] ▋ As in other actions based on negligence a plaintiff, in order to recover damages, must also establish that the defendant breached that duty and that such breach was a proximate cause of injury to plaintiff. [Citation.] ▋ The burden is on the plaintiff to prove every essential fact on which she relies [citation]. This burden is not met merely by proof that plaintiff invitee stepped on something while on invitor's premises and thereby was caused to fall and receive injuries, for '[n]o inference of negligence arises based simply upon proof of a fall upon the owner's floor. The doctrine of res ipsa loquitur is not applicable to such cases.' [Citations.] Also, as pointed out in *Reese* v. *Smith*, 9 Cal.2d 324, at page 328 [70 P.2d 933]: 'If the existence of an essential fact upon which a party relies is left in doubt or uncertainty, the party upon whom the burden rests to establish that fact should suffer, and not his adversary. [Citation.] A judgment cannot be based on guesses or conjectures. [Citation].' Nor may a verdict be upheld 'only by resort to speculation.' ''

Applied to the facts at bar the following language of *Nagle* v. *City of Long Beach*, 113 Cal.App.2d 669, 672 [248 P.2d

799], is pertinent: "[I]t might well have been that a thorough scrutiny by respondent would have failed to reveal any defective conditions. Where such proof is lacking, there can be no finding that a reasonable inspection by respondent would have discovered the alleged danger. It follows that the motion for nonsuit was properly granted."

It should be kept in mind that the basis of liability for alleged negligence is foreseeability of harm to another. *Tucker* v. *Lombardo,* 47 Cal.2d 457, 464 [303 P.2d 1041]: "It is an elementary principle that negligence is gauged by the ability to anticipate danger. '[R]easonable foresight of harm is essential to the concept of negligence, and supplies the criterion for determining whether it exists in a particular case, and reasonable foreseeability of harm is the fundamental basis of the law of negligence. . . . On the other hand, one is not bound to foresee every possible injury which might occur, or every possible eventuality, but only those which were reasonably foreseeable; and one is not required to anticipate against dangers which it is not his duty to avoid.' (65 C.J.S. § 5c (2) (a), pp. 354-359.) This principle of foreseeable danger as the basis for liability underlies the doctrine of the leading case of *Palsgraf* v. *Long Island R. Co.,* 248 N.Y. 339 [162 N.E. 99, 59 A.L.R. 1253], where Justice Cardozo recognized actionable negligence as involved in proceeding at reckless speed through a crowded city street, but stated at page 100: 'If the same act were to be committed on a speedway or race course, it would lose its wrongful quality. The risk reasonably to be perceived defines the duty to be obeyed, and risk imports relation; it is risk to another or to others within the range of apprehension.' " It seems clear that lack of foreseeability of an accident such as the one in this case is a reasonable conclusion to draw from the facts known or which should have been known to Cherry.

But appellant argues that there was proof of "tampering and vandalism" which placed an added duty upon Cherry. "Thus, clearly tampering and vandalism was possible. And in fact it had occurred and the Cherry Hardware Company had notice of it. Mr. Georgi testified that incinerator caps had been stolen from time to time; that there was an elementary school directly across the street from the store, and that often the children would play with the incinerators and open and close the doors." Stolen incinerator caps surely would not suggest anything further than *possibility* of other and potentially dangerous kinds of damage to the incinerators.

Though children would play with them and open and close the doors, no known damage had been so caused. As stated by counsel in the above quotation, these things spell but a *possibility* of tampering and vandalism. The duty of foreseeability of accidents is limited to those things which are reasonably probable and that is a fact question (*Herrera* v. *Southern Pac. Co.*, 155 Cal.App.2d 781, 786 [318 P.2d 784] ; *Mosley* v. *Arden Farms Co.*, 26 Cal.2d 213, 217 [157 P.2d 372, 158 A.L.R. 872]), which has been decided against appellant at bar and we think properly so.

The conclusion that plaintiff had no good cause of action against Cherry Hardware Company is adequately supported by the evidence.

The judgment is affirmed.

Fox, P. J., concurred.