[No. C034976. Third Dist. June 20, 2002.]

MONICA GARRETSON, Plaintiff and Appellant, v.
HAROLD I. MILLER, a Professional Law Corporation, Defendant and
Appellant.

COUNSEL

Law Offices of Alan Grossman, H. Mal Cameron and Joseph P. Meyers for Plaintiff and Appellant.

Segal & Kirby and James R. Kirby II for Defendant and Appellant.

OPINION

**HULL, J.**—Following a jury verdict for plaintiff on her legal malpractice claim, the trial court granted the motion for judgment notwithstanding the verdict of defendant Harold I. Miller, a Professional Law Corporation (defendant). The court also granted defendant's motion for new trial but denied as moot defendant's motion to vacate, or amend, the judgment.

Plaintiff appeals both the judgment notwithstanding the verdict and the order granting a new trial. Defendant appeals the order denying the motion to vacate the judgment.

We conclude, as did the trial court, plaintiff failed to satisfy her burden of proving that any judgment she might have obtained in her "case-within-a-case" would have been collectible. We, therefore, affirm the judgment notwithstanding the verdict.

### FACTS AND PROCEDURAL HISTORY

Plaintiff, Monica Garretson, sustained an injury on December 23, 1991, while working for Jackson Creek Dental Group (Jackson Creek). Plaintiff

had arrived at work that morning and began turning on a bank of switches that controlled the lights and equipment in the office. When she turned on a switch that controlled an air compressor, plaintiff "heard a loud bang like a shotgun going off" and saw "a little bolt of lightening [come] shooting out at [her]." She was "zapped" and "knocked . . . back into the closet area."

Later that morning, plaintiff started perspiring, shaking and feeling sick. Her head began aching and her vision blurred. Plaintiff was taken to the hospital, where it was determined she had received second degree burns on the tips of her thumb and forefinger. While at the hospital, plaintiff's hand began to swell and her leg became numb from the knee to the hip. She also noticed the ball of her foot was sore, and she could not bend the last three toes of her foot.

Over the next several years, plaintiff was examined and treated by a number of medical doctors. The general consensus among the medical professionals was that, as a result of the incident, plaintiff developed a condition called reflex sympathetic dystrophy, also known as autonomic reflex dystrophy, or complex regional pain syndrome (hereafter CRPS). CRPS has been described as pain "out of proportion to the apparent injury or the physical findings," resulting from some "noxious event, trauma, or some sort of binding like casting." It normally affects a region of the body and is accompanied by "a continuous pain, frequently described as a burning pain, and the presence of hypersensitivity . . . ."

Shortly after the incident, plaintiff was advised to see an attorney and called defendant. Plaintiff met with an attorney employed by defendant, who advised her she had a workers' compensation claim. Defendant thereafter pursued the claim on plaintiff's behalf. Defendant never advised plaintiff she might have a viable personal injury claim against third parties. Rather, sometime after the one-year statute of limitations had run, defendant's sole shareholder, Harold I. Miller, informed plaintiff the workers' compensation insurer had investigated the matter and would not have paid benefits had there been third parties responsible for the incident.

Defendant continued to represent plaintiff in the workers' compensation matter until May 1995, when she moved out of the area and hired a new attorney. At that time, plaintiff was informed defendant should have filed a personal injury claim on her behalf. Plaintiff then initiated this legal malpractice action against defendant and Harold I. Miller, individually.

The matter went to trial, where the following facts were established regarding the 1991 incident and the possible responsibility of third parties,

i.e., the case-within-a-case: Dr. Ron Ask began practicing dentistry in 1978 and later formed Jackson Creek. In 1988, Ask hired John Matta to construct a 7,500-square-foot office building to house Jackson Creek and other tenants. D & R Electric was hired to do the electrical work. One of the tenant improvements put into the building for Jackson Creek was an air compressor to power the dental equipment. Also installed was a bank of switches to control the lights and equipment in the dental office, including the compressor.

The plans for the building indicated the use of a three-horsepower compressor with 30 amps of current and 2,530 watts of power. The plans also showed a "Mag starter switch" to be used with the compressor, but that notation had been crossed out. The wall switch that was installed to control power to the compressor was too small to do the job. It was not rated for a three-horsepower motor.

Plaintiff's theory at trial was that the undersized switch installed by D & R Electric, under the supervision of Dr. Ask, in his capacity as a landlord, and John Matta, allowed a condition to develop inside the switch that eventually triggered the event that caused plaintiff's injuries. According to plaintiff, defendant should have recognized she had a viable claim against those parties and taken steps to preserve her claim before the statute of limitations ran. Defendant did not. Defendant presented evidence that the incident could not have occurred as plaintiff reported and that she could not have been injured by the switch.

The jury returned a special verdict as follows: (1) defendant was negligent; (2) Harold I. Miller was not negligent; (3) third parties were negligent in connection with the incident that caused plaintiff's injuries; (4) the negligence of those third parties proximately caused plaintiff's injuries; (5) the negligence was apportioned 12 percent to Dr. Ask, 48 percent to John Matta, and 40 percent to D & R Electric; (6) plaintiff suffered damages as a result of the negligence of third parties; and (7) the damages were $872,000 economic and $1.35 million noneconomic.

Defendant filed a motion for judgment notwithstanding the verdict, arguing plaintiff failed to present evidence that any judgment against third parties was collectible. Defendant also moved for a new trial, arguing, among other things, there was no evidence of collectibility, the court erroneously instructed the jury on res ipsa loquitur, and the jury committed misconduct. Finally, defendant moved to amend, or vacate, the judgment on the grounds plaintiff suffered no net damages and the trial court failed to deduct for workers' compensation benefits received and attorney fees and costs plaintiff would have incurred in an action against the third parties.

The trial court granted defendant's motion for judgment notwithstanding the verdict. The court also granted defendant's motion for a new trial on the basis of the res ipsa loquitur instructions and jury misconduct. The court denied the motion to vacate, or amend, as moot.

Plaintiff appeals both the judgment notwithstanding the verdict and the order granting a new trial. Although plaintiff also appealed the judgment in favor of Harold I. Miller, individually, she has abandoned that portion of the appeal by raising no arguments in that regard. Defendant cross-appeals from the order denying its motion to vacate the judgment.

## DISCUSSION

■ Code of Civil Procedure section 629 provides in relevant part: "The court, before the expiration of its power to rule on a motion for a new trial, either of its own motion, after five days' notice, or on motion of a party against whom a verdict has been rendered, shall render judgment in favor of the aggrieved party notwithstanding the verdict when a motion for a directed verdict for the aggrieved party should have been granted had a previous motion been made." " 'The trial court's discretion in granting a motion for judgment notwithstanding the verdict is severely limited.' [Citation.] ' "The trial judge's power to grant a judgment notwithstanding the verdict is identical to his power to grant a directed verdict [citations]. The trial judge cannot reweigh the evidence [citation], or judge the credibility of witnesses. [Citation.] If the evidence is conflicting or if several reasonable inferences may be drawn, the motion for judgment notwithstanding the verdict should be denied. [Citations.] 'A motion for judgment notwithstanding the verdict of a jury may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict. If there is any substantial evidence, or reasonable inferences to be drawn therefrom, in support of the verdict, the motion should be denied.' " ' " (*Hansen v. Sunnyside Products, Inc.* (1997) 55 Cal.App.4th 1497, 1510 [65 Cal.Rptr.2d 266].)

■ "The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." (*Budd v. Nixen* (1971) 6 Cal.3d 195, 200 [98 Cal.Rptr. 849, 491 P.2d 433].) ■ This dispute concerns the third element—whether any loss suffered by plaintiff was proximately caused by defendant's negligence. California follows the majority rule that a malpractice plaintiff must prove not only negligence on the

part of his or her attorney but that careful management of the case-within-a-case would have resulted in a favorable judgment *"and collection of same . . . ."* (*Campbell v. Magana* (1960) 184 Cal.App.2d 751, 754 [8 Cal.Rptr. 32], italics added.)

The trial court concluded that plaintiff failed to present any evidence of collectibility. In particular, the court noted there was no evidence of insurance, property with equity value, or other assets held by any of the third party defendants.

Plaintiff contends defendant is estopped from arguing the jury improperly resolved the collectibility issue because defendant failed to request an instruction defining collectibility. The jury was instructed pursuant to BAJI No. 6.37.5 as follows: "In order to recover damages from an attorney for negligence in the handling of a lawsuit, which negligence resulted in the plaintiff's loss of the prior lawsuit, the plaintiff must establish: [¶] 1. The attorney was negligent in the handling of the prior lawsuit; [¶] 2. The proper handling of the prior lawsuit by the professional would have resulted in a collectible judgment." No further guidance was given. Plaintiff argues that defendant is relying on a strict definition of collectibility, not presented to the jury, which requires proof of exactly how much of the verdict plaintiff could have collected. Plaintiff further argues that defendant essentially hid the issue of collectibility from the plaintiff, the court and the jury until after a verdict was reached.

Plaintiff does not dispute that the burden of raising and proving collectibility resided with her. ■ It was an element of her case rather than an affirmative defense. (*Campbell v. Magana, supra,* 184 Cal.App.2d at p. 754 (*Campbell*).) ■ Hence, her argument that defendant somehow hid the issue holds no water. The question on appeal is whether plaintiff satisfied her burden of proof, i.e., whether there is substantial evidence in the record to support the jury's implicit finding of collectibility.

Before considering the evidence presented at trial, we shall explain what plaintiff was required to prove. In a handful of cases, the California appellate courts have addressed the notion of collectibility in a manner that allows for confusion as to its meaning.

In *Lally v. Kuster* (1918) 177 Cal. 783 [171 P. 961], the plaintiff employed an attorney to collect an overdue note and mortgage, but the collection action was dismissed by the court over four and one-half years later due to lack of diligent prosecution. Regarding the plaintiff's burden in the subsequent malpractice action, the state high court quoted from Corpus Juris as

follows: " 'In a suit by a client against an attorney for negligence in conducting the collection of a claim, whereby the debt was lost, the burden rests on the former to allege and prove every fact essential to establish such liability. He must allege and prove that the claim was turned over to the attorney for collection; that there was a failure to collect; that this failure was due to the culpable neglect of the attorney, and that, *but for such negligence, the debt could, or would, have been collected.* Hence, where a claim is alleged to have been lost by an attorney's negligence, in order to recover more than nominal damages it must be shown that it was a valid subsisting debt, *and that the debtor was solvent.*' " (*Id.* at pp. 787-788, italics added, quoting 6 C.J. (1916) Attorney and Client, § 260, p. 710.)

In *Feldesman v. McGovern* (1941) 44 Cal.App.2d 566 [112 P.2d 645], the plaintiff sued his attorney for failure to file a petition for discharge in bankruptcy. The Court of Appeal explained that the plaintiff in a malpractice action must prove the attorney's proper performance "would have resulted beneficially to the client." (*Id.* at p. 568.) The court reiterated the language of *Lally* requiring the plaintiff to prove that " ' "*the debt could, or would, have been collected . . .*" ' " (*Feldesman,* at p. 569) and that the debtor "was solvent and the judgment would have been collected" (*id.* at p. 570).

■ *Campbell v. Magana, supra,* 184 Cal.App.2d 751, involved attorney negligence in handling a lawsuit for the plaintiff. Relying on both *Lally* and *Feldesman,* the court indicated that the plaintiff must prove that "careful management of [the suit] would have resulted in recovery of a favorable judgment and collection of same . . . ." (*Campbell,* at p. 754.) In *Walker v. Porter* (1974) 44 Cal.App.3d 174 [118 Cal.Rptr. 468] (*Walker*), the court cited *Campbell* for the proposition that a malpractice plaintiff must prove that any judgment she could have obtained "would have been collectible." (*Walker,* at p. 178.) There, the trial court had not considered collectibility, having resolved the matter on other grounds. In reversing, and to justify returning the matter to the trial court for trial, the Court of Appeal noted, in passing, "that appellant alleged collectibility in her complaint. She should be given the opportunity to prove it. Implicitly it appears from the bare allegation that county is solvent; county would be assumed to do business with a solvent contractor and, even as to appellant's landlord, *a complexion of some solvency is suggested.*" (*Ibid.,* fn. omitted & italics added.)

In *DiPalma v. Seldman* (1994) 27 Cal.App.4th 1499 [33 Cal.Rptr.2d 219] [*DiPalma*], an appeal challenging the trial court's decision to grant a nonsuit on the ground that a judgment was not collectible, the court picked up on the "complexion of some solvency" language of *Walker, supra,* 44 Cal.App.3d at page 178, and concluded that collectibility had been established by virtue of

real estate owned, and mortgages held, by the parties against whom the plaintiff had a claim. (*DiPalma*, at pp. 1509-1510.) Although the court chose to use the phrase from *Walker*, in returning the matter for further trial, it also observed there "was substantial evidence [the defendants in the underlying action] had assets available to satisfy the . . . judgment . . . ." (*DiPalma*, at p. 1510.)

As our survey of these cases demonstrates, a plaintiff in a malpractice action must prove he would have obtained a judgment in the underlying action and that the judgment, or some portion of it, could have been collected. Some courts and commentators have, unfortunately as it turns out, employed the term "solvent" to describe a judgment debtor from whom a judgment could have been collected. And some have used the inexplicit phrase "complexion of solvency" when they mean that there was sufficient reason to believe that a plaintiff would be able to prove that the underlying judgment could have been collected when the matter was returned for trial. But these cases do not stand for the proposition that a malpractice plaintiff need only show "solvency," as the word is used in the practice of accounting, or as it is defined in the dictionary, or a "complexion of solvency" in order to prevail in the malpractice action. The issue continues to be that which it has always been: The plaintiff must prove that the underlying judgment could have been collected.

We have alluded to cases where a plaintiff could not prove that he could have collected the full amount of the underlying judgment but only a portion thereof. His damages in the malpractice action are then limited to that portion of the underlying judgment he could have collected. This is consistent with the fundamental principle of tort law that a plaintiff claiming negligence must prove causation. As in other negligence actions, an attorney who fails to exercise due care in the handling of a client's affairs is liable "for all damages directly and proximately caused by his negligence." (*Pete v. Henderson* (1954) 124 Cal.App.2d 487, 489 [269 P.2d 78, 45 A.L.R.2d 58].) The attorney's negligence causes the plaintiff to lose only that portion of the underlying judgment that could have been collected.

In *McDow v. Dixon* (1976) 138 Ga.App. 338 [226 S.E.2d 145], the Georgia court repeated the common refrain that a malpractice plaintiff must prove solvency of the debtor. However, the court explained that this requirement " 'is simply an application of the doctrine, everywhere recognized, that a party claiming damages must prove not only the wrong, but the amount of his damages as well.' " (*Id.* at p. 147.) The court continued: "A client suing his attorney for malpractice not only must prove that his claim was valid and would have resulted in a judgment in his favor, but also that said judgment would have been collectible in some amount, *for therein lies the measure of*

*his damages.*" (*Ibid.*, italics added; see also *Taylor Oil Co. v. Weisensee* (S.D. 1983) 334 N.W.2d 27, 29.)

For example, in *Sitton v. Clements* (E.D.Tenn. 1966) 257 F.Supp. 63, affirmed (6th Cir. 1967) 385 F.2d 869, a jury award of approximately $162,500 against an attorney was reduced to $81,250 by the trial court, because the defendant in the underlying suit would not have been able to satisfy the larger judgment. (*Sitton v. Clements, supra,* at p. 67.) Thus, only the loss of the reduced amount had been proximately caused by the attorney's negligence.

██ Thus, in order to withstand a motion for judgment notwithstanding the verdict, a malpractice plaintiff need only have proven he could have collected *something* from the defendant in the case-within-a-case, and it is that amount that is the proper measure of his damages in the malpractice action. Judgment notwithstanding the verdict for a malpractice defendant is appropriate only if there is no substantial evidence that the plaintiff could have collected at least some part of the underlying judgment. (See *Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Hansen v. Sunnyside Products, Inc., supra,* 55 Cal.App.4th at p. 1510.)

Turning now to the facts of this matter, plaintiff contends evidence was presented that Dr. Ask was a practicing dentist and owned Jackson Creek, an entity with 25 employees. According to plaintiff, "the jury was well warranted in concluding that Ronald Ask was a significant income earner just as the result of his dental practice." Plaintiff further cites evidence that Ask developed the 7,500-square-foot office building housing Jackson Creek and other tenants, which generated rental income, and Ask was "involved in seven or eight other projects with the same contractor he used in constructing this building."

Notwithstanding the foregoing, plaintiff presented no evidence of Ask's income, expenses, or debts. No evidence was presented that he was insured against property, or liability, claims. From this record, one cannot determine whether Ask had any positive net income, net worth, or other means of satisfying a judgment. Plaintiff argues it is mere speculation that Ask may have been on the verge of bankruptcy. This is true. However, this speculation is the result of plaintiff's failure to satisfy her burden of presenting evidence of collectibility. Defendant had no burden of presenting evidence of Ask's debts and expenses.

The trial court precluded plaintiff from asserting claims against two other potential defendants in the case-within-a-case, the manufacturer and the

distributor of the air compressor. She argues the trial court thus "deprived her of two major parties whose assets and/or liability insurance coverage would have—in all probability—far exceeded the amount of the verdict." We assume by this she means that it was error to preclude her claims against those parties and, but for that error, there would have been sufficient proof of collectibility.

Two responses to plaintiff's argument come to mind. First, plaintiff has not appealed the trial court's ruling regarding the manufacturer and the distributor. It is difficult for us to discern a theory under which she can challenge the trial court's ruling on defendant's motion for judgment notwithstanding the verdict by enlisting claims that she has abandoned by her failure to challenge the trial court's ruling on appeal. If she wanted those parties' assets considered on the issue of collectibility, she should have appealed the trial court's ruling as to those claims, established that the trial court's ruling was error and proceeded against those parties on remand. She has not done that.

Second, even if we could somehow consider the issue procedurally, plaintiff's argument asks us to reverse the trial court on the basis of three assumptions: (1) It was error to preclude her claims against the manufacturer and the distributor, (2) absent the error, the manufacturer and the distributor would have been found liable, and (3) absent the error, their assets would have been sufficient to satisfy plaintiff's judgment, or some part thereof. We note, as to the last assumption, the best plaintiff has done is suggest that the two additional parties could have satisfied the judgment "in all probability."

There is no proof, or even an offer of proof, in this record that either of these parties would have been found liable or that either could have satisfied all, or part, of a judgment. We cannot make the assumptions plaintiff suggests, or treat mere speculation as evidence of collectibility sufficient to defeat a motion for judgment notwithstanding the verdict.

In sum, the issue of collectibility was not tried. No evidence was presented by plaintiff to establish collectibility of any judgment that might have been obtained but for defendant's negligence, and no argument was made to the jury on the subject. This failure of proof on the part of plaintiff warranted entry of judgment notwithstanding the verdict.

Plaintiff argues that additional evidence of collectibility could have been presented had the issue been raised by defendant. She cites declarations of Dr. Ask, which were submitted in opposition to defendant's posttrial motions. Ask indicated he had an insurance policy covering the office building

and that the building was worth $850,000 in 1993 and 1994. However, because this evidence was not presented at trial, it could not be considered in connection with defendant's motion.

Nevertheless, plaintiff argues that, where evidence existed that could have been, but was not, presented at trial, the proper remedy was to grant a new trial rather than judgment notwithstanding the verdict. Plaintiff relies on *Fountain Valley Chateau Blanc Homeowner's Assn. v. Department of Veterans Affairs* (1998) 67 Cal.App.4th 743 [79 Cal.Rptr.2d 248] (*Fountain Valley*), where the court stated the following in connection with a new trial ruling: "When a trial judge grants a motion for new trial based on insufficiency of the evidence, it is *not* because the judge has concluded that the plaintiff *must* lose, but only because the evidence in the trial that actually took place did not justify the verdict. Evidence might exist to justify the verdict, but for some reason did not get admitted; perhaps the plaintiff's attorney neglected to call a crucial witness or ask the right questions. *There is still the real possibility that the plaintiff has a meritorious case.* Indeed, such a conclusion is a simple corollary from the observation of our Supreme Court in the venerable *Auto Equity* [*v. Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]] decision that the essential function of the new trial is to *reexamine* the evidence." (*Fountain Valley, supra,* at p. 752, fn. omitted.)

Plaintiff's reliance on *Fountain Valley* is misplaced. There, a homeowners association brought an action against a homeowner alleging failure to comply with the covenants, conditions and restrictions of a subdivision and the homeowner cross-complained for, among other things, invasion of privacy and trespass. A jury returned a verdict in favor of the homeowner on the cross-complaint and the association moved for judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court granted a new trial, explaining that, on the facts presented, the association had acted reasonably. (*Fountain Valley, supra,* 67 Cal.App.4th at pp. 748-749.)

The homeowner sought a writ of mandate to overturn the new trial order, and the Court of Appeal granted the writ. The court first explained that the new trial order was in reality a judgment notwithstanding the verdict, because the trial court effectively ruled in favor of the association "by stating on the record that [the homeowner] could *never* prevail given the reasonableness of the [association's] position." (*Fountain Valley, supra,* 67 Cal.App.4th 743 at pp. 752-753.) Applying the review standards applicable to a judgment notwithstanding the verdict, the court concluded that, while the evidence might have warranted a new trial, it did not establish that the association acted reasonably as a matter of law. (*Id.* at pp. 753-756.)

*Fountain Valley* does not stand for the proposition that, where evidence exists but was not presented at trial, the only appropriate remedy is a new trial rather than judgment notwithstanding the verdict. The discussion on which plaintiff relies is dictum. ■ The positive authority of a decision is coextensive with its facts. (*Trope v. Katz* (1995) 11 Cal.4th 274, 284 [45 Cal.Rptr.2d 241, 902 P.2d 259]; *Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1157 [278 Cal.Rptr. 614, 805 P.2d 873].) ■ Furthermore, the dictum in *Fountain Valley* is not persuasive. Trial is the one opportunity a party has to present whatever evidence exists on the issues presented. It is not a practice run to be scrapped in favor of a more complete proceeding in the event of an adverse judgment.

As indicated previously, a motion for judgment notwithstanding the verdict " 'may properly be granted only if it appears from the evidence, viewed in the light most favorable to the party securing the verdict, that there is no substantial evidence to support the verdict.' " (*Hansen v. Sunnyside Products, Inc.*, *supra*, 55 Cal.App.4th at p. 1510.) In assessing whether judgment notwithstanding the verdict was properly granted, we consider the trial that was actually conducted, not the one that might have been conducted. In the trial that occurred in this matter, plaintiff presented no evidence on the issue of collectibility. This defect in plaintiff's proof was not due to any erroneous ruling by the trial court but was due to plaintiff's failure to present a prima facie case. Regardless of the merits of plaintiff's case-within-a-case, she failed to present any evidence that a favorable judgment would have been collectible. Judgment notwithstanding the verdict was therefore properly granted to defendant.

Having so concluded, we need not consider defendant's alternate arguments for affirming the judgment notwithstanding the verdict. We also need not consider whether the trial court properly granted defendant's motion for a new trial, or properly denied defendant's motion to vacate, or to amend.

### DISPOSITION

The judgment is affirmed. The parties shall bear their own costs on appeal.

Scotland, P. J., and Kolkey, J., concurred.

A petition for a rehearing was denied July 22, 2002, and the petition of appellant Monica Garretson for review by the Supreme Court was denied September 11, 2002. Kennard, J., was of the opinion that the petition should be granted.